## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NOEL BROOKS #314122** | **CIVIL ACTION** |
| **versus** | **NO. 06-1869** |
| **BURL CAIN, WARDEN** | **SECTION: "N" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Noel Brooks, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 18, 1992, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2]  On July 23, 1992, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[3]  On January 27, 1994, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]

On or about January 13, 1997, petitioner filed with the state district court an application for post-conviction relief.[5]  Based on that application, as subsequently amended, he was eventually granted an out-of-time appeal on April 12, 2002;[6] however, on December 11, 2002, the Louisiana Fourth Circuit Court of Appeal again affirmed his conviction and sentence.[7]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari[8] which was denied on October 17, 2003.[9]

---

[2] State Rec., Vol. I of VII, minute entry dated July 17, 1992; State Rec., Vol. III of VII, jury verdict form.

[3] State Rec., Vol. I of VII, minute entry dated July 23, 1992.

[4] State v. Brooks, No. 92-KA-2180 (La. App. 4th Cir. Jan. 27, 1994) (unpublished); State Rec., Vol. I of VII.

[5] State Rec., Vol. I of VII.

[6] State Rec., Vol. I of VII, transcript of April 12, 2002; State Rec., Vol. I of VII, minute entry dated April 12, 2002.

[7] State v. Brooks, No. 2002-KA-1079 (La. App. 4th Cir. Dec. 11, 2002) (unpublished); State Rec., Vol. III of VII.

[8] State Rec., Vol. VI of VII.

[9] State ex rel. Brooks v. State, 855 So.2d 757 (La. 2003) (No. 2003-KO-0706); State Rec., Vol. VI of VII.

On or about December 9, 2003, petitioner filed with the state district court another application for post-conviction relief.[10]  That application was denied on February 19, 2004.[11]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review[12] which was denied on April 26, 2004.[13]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari[14] which was denied on March 24, 2005.[15]

On or about April 1, 2005, petitioner filed with the state district court yet another application for post-conviction relief.[16]  That application was denied on July 20, 2005.[17]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of

---

[10]  State Rec., Vol. V of VII.

[11]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[12]  State Rec., Vol. V of VII.

[13]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[14]  State Rec., Vol. VI of VII.

[15]  State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

[16]  State Rec., Vol. V of VII.

[17]  State Rec., Vol. V of VII, Judgment dated July 20, 2005.

review[18] which was denied on November 15, 2005.[19]  He then filed with the Louisiana Supreme

Court an application for a writ of certiorari[20] which was denied on September 29, 2006.[21]

While that application was pending, petitioner, on March 21, 2006, filed this federal

application for *habeas corpus* relief.[22]  In support of his application, he raises the following claims:

1.     The prosecution withheld evidence favorable to the defense

       and allowed false testimony to go uncorrected;

2.     The prosecution committed fraud upon the court; and

3.     Petitioner received ineffective assistance of counsel.[23]

---

[18]  State Rec., Vol. V of VII.

[19]  State v. Brooks, No. 2005-K-1252 (La. App. 4th Cir. Nov. 15, 2005) (unpublished); State Rec., Vol. V of VII.

[20]  State Rec., Vol. VI of VII.

[21]  State *ex rel.* Brooks v. State, 937 So.2d 858 (La. 2006) (No. 2006-KH-0746).

[22]  Rec. Doc. 3.

[23]  In his original application, petitioner additionally claimed that the prosecutor made improper and prejudicial comments to the jury during argument, although petitioner noted that he had not exhausted his state court remedies with respect to that claim.  Rec. Doc. 3, supplemental memorandum, p. 17.  In its response, the state also noted that the claim was unexhausted in part and argued that the application should be dismissed as a mixed petition unless petitioner withdrew the claim.  Rec. Doc. 14, p. 15.  In his reply to that response, petitioner indicated that he was in fact withdrawing that claim.  Rec. Doc. 19, p. 11.  Accordingly, that claim is not properly before the Court.

However, out of an abundance of caution, the Court notes that the claim has no merit in any event.  The United States Fifth Circuit Court of Appeals has held:

Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so

The state concedes that petitioner's federal application was timely filed.[24]

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

---

insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote omitted); see also Jones v. Butler, 864 F.2d 348 (5th Cir. 1989). In other words, a prosecutor's remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict." Harris, 313 F.3d at 245.

The prosecutor's comments which petitioner now finds objectionable are discussed in greater detail later in this opinion in connection with a related ineffective assistance of counsel claim. Specifically, petitioner complains that the prosecutor indicated that additional witnesses were not called because it would have placed them in danger, erroneously implied that petitioner's flight in St. James Parish was related to this crime, and improperly made references to other unrelated murders in the city. State Rec., Vol. II of VII, transcript of arguments, pp. 3-4 and 29. Even if those comments were improper, they were neither persistent nor pronounced. Further, in light of the overwhelming evidence against petitioner, as well as the trial judge's repeated instructions that counsels' arguments were not evidence, this Court has no hesitation in concluding that there is no probability that the comments played any part whatsoever in the conviction.

[24] Rec. Doc. 14, p. 2.

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u>[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On the second direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial NOPD Detective Norman McCord testified that when he answered a homicide call at 8:57 p.m. on 20 August 1991, at Derbigny and Art Streets, he found the body of Calvin Williams on the sidewalk.  He interviewed several people on the street who witnessed the crime and who told him defendant was the assailant.
> Donnie Ray Clay, the victim's cousin, testified that he was with Calvin Williams from 3 p.m. until the time of the murder.  Clay said that several young men including the defendant and Williams

were lifting weights and then drinking beer from 3 until 6 p.m. on the corner of Art and Derbigny Streets.  Clay saw the defendant had a gun.  Later, as Clay and Williams were driving to a nearby park, they saw the defendant at the bus stop.  The defendant asked Williams to give his girlfriend a ride, but Williams refused and pulled off.  After spending twenty minutes at the park, Clay and Williams returned to the corner of Art and Derbigny Streets.  Clay then saw Williams speaking to a girl in a jeep as the defendant drove up in a blue car. The defendant got out, approached Williams, and began speaking. Clay walked toward them and heard the defendant ask, "Why you had pulled off in my face?"  Williams answered, "This is my car.  I do what I want with it."  Then the defendant pushed Williams, and when Williams pushed back, the defendant shot him in the chest from the distance of about two and one-half feet.  Williams spun away as though to run and when the defendant shot again, Williams collapsed. Clay and Matthew Short, who had run to Williams' side, caught him and then set him down on the sidewalk.  The police came almost immediately, and Clay named the defendant as the assailant.  Later, Clay picked the defendant's picture from a photo line-up.

Matthew Short, another friend of both the victim and the defendant, corroborated Clay's testimony, naming the defendant as the killer.

Dr. Paul McGarry, an expert in forensic pathology, testified that when he performed the autopsy on Calvin Williams, he found two gunshot wounds.  He said that one wound was surrounded by gunpowder indicating that the gun was within ten inches of the body when fired.  That bullet penetrated both lungs and the aorta.  The second bullet pierced the soft tissue of the right thigh.  Neither bullet remained in the body.

St. James Parish Deputy Ryan Bourgeois testified that in the early morning of 21 August 1991, he was involved in an automobile chase that ended with the arrest of Noel Brooks.  Deputy Bourgeois said he followed a brown Oldsmobile at speeds of up to 100 miles per hour until the Oldsmobile went into a ditch.  When the car stopped four men jumped out and ran into a sugar cane field.  Hours later the defendant was arrested after he was found hiding under a truck.

Detective Sanders Harris, a criminal investigator in St. James Parish, testified that he questioned the defendant after his arrest. Harris asked the defendant if he had a gun, and the defendant answered that he had thrown his gun over his head into the cane field as he ran.  The defendant took Harris to the place where he threw the gun, and Harris found a loaded gun there.

David Moore, a friend of Williams and the defendant, testified for the defense that he owned the weights that the young men came by to use each afternoon. Moore said that during the afternoon of 20 August 1991, he did not see the defendant with a gun. Moore declared that he did not see the shooting.

The defendant testified on his own behalf. He related that after lifting weights with his friends on 20 August 1991, he visited a woman who told him "some guys" had passed around the area, asking her if she knew Calvin. The defendant then went to the corner of Art and Derbigny Streets where he saw Calvin Williams standing. As the defendant approached Williams to warn him, two men walked up and the defendant pushed Williams out of the way. The defendant said that when he realized one of the men was reaching for a gun, he ran. Shortly thereafter, he heard shots and also heard Matthew Short scream, "Noel shot dog." The defendant said he was frightened because of what Short said, so he ran. The defendant went with some friends to St. Charles Parish later that evening. He denied having a gun that evening, shooting Williams, or telling a deputy where he threw a gun.[25]

<u>Withheld Evidence/False Testimony</u>

Petitioner claims the prosecution wrongly withheld a supplemental police report. He argues that report was favorable to the defense because it incorporated a prior inconsistent statement by Donnie Clay, as well as information regarding the events leading to the discovery of the weapon by the St. James Parish officers. Petitioner also claims that the prosecution allowed false testimony to go uncorrected. When he asserted those claims in his state post-conviction proceedings, the state district court found that they had "no merit."[26] The Louisiana Fourth Circuit Court of Appeal found

---

[25]  <u>State v. Brooks</u>, No. 2002-KA-1079, at pp. 2-4 (La. App. 4th Cir. Dec. 11, 2002) (unpublished); State Rec., Vol. III of VII.

[26]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

"no error" in that ruling,[27] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[28]

With respect to claims that the prosecution withheld evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny, the United States Supreme Court has held:

> A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

<u>Youngblood v. West Virginia</u>, 126 S.Ct. 2188, 2190 (2006) (per curiam) (internal citations and quotation marks omitted). Therefore, to prevail on a <u>Brady</u> claim, the petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." <u>DiLosa v. Cain</u>, 279 F.3d 259, 262-63 (5th Cir. 2002).

Because a <u>Brady</u> claim presents a mixed question of law and fact, this Court is required to defer to state court decisions rejecting such a claim unless they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Trevino v. Johnson</u>, 168 F.3d 173, 184 (5th Cir. 1999).

---

[27]   <u>State v. Brooks</u>, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[28]   <u>State ex rel. Brooks v. State</u>, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

Petitioner contends that the prosecution should have provided the defense with a statement given by Donnie Clay to Detective Joseph Catalanotto.[29]  Petitioner alleges that the prior statement would have been helpful to the defense in two respects.  First, he notes that it could have been used to impeach Clay on the issue of when he saw the gun.  In the statement, Clay said that he did not see the gun prior to the shooting;[30] however, at trial, he said just the opposite.[31]  Second, petitioner argues that the statement was also partially exculpatory.  He notes that, in the statement, Clay said:  "He [petitioner] shot Calvin and started running.  As he started to run, he said he didn't want to shoot him but he made him."[32]  Petitioner argues that this purported declaration, which he denies making because he denies shooting the victim, was nevertheless exculpatory because it indicates a lack of "specific intent" to kill the victim.

Petitioner further alleges that the supplemental police report should have been produced because it contained favorable information regarding the discovery of the weapon.  In pertinent part, the police report states:

> On Wednesday, August 28, 1991 at approximately 3:30PM Det. McCord returned Major Jasmin's call and learned that the night that Noel Brooks was arrested there was a vehicle chase which was followed by a foot chase through a wooded area in his parish.  *The next day after Noel Brooks arrest* personnel from his department searched the wooded area and recovered a nickle plated, .357 mag,

---

[29]  As noted, that statement was incorporated verbatim into the supplemental police report.  State Rec., Vol. II of VII, supplemental police report, pp. 9-11.

[30]  State Rec., Vol. II of VII, supplemental police report, p. 10.

[31]  See, e.g., State Rec., Vol. IV of VII, trial transcript, p. 147.

[32]  State Rec., Vol. II of VII, supplemental police report, p. 10.

Tauraus [sic], revolver, serial # 18964 from the area of the arrest of
Noel Brooks.[33]

However, at trial, Detective Harris answered affirmatively when asked whether petitioner gave a statement "[a] few days later" after his arrest.  In that statement, petitioner purportedly revealed that he disposed of the gun in the cane field after the car chase and then went with officers to the field to show them where the gun could be found.[34]  Petitioner opines that the supplemental police report could have been used to impeach Harris because petitioner could not have lead police to the gun days after his arrest if the gun had already been recovered the day immediately following his arrest.

As noted above, the first inquiry this Court must make with respect to petitioner's Brady claim is whether the evidence in question was in fact withheld.  The parties clearly disagree on that issue.

The state first argues that the supplemental police report, including the incorporated statement from Clay, must in fact have been given to the defense prior to or at trial because a copy of it appears in the state appellate record.  Petitioner counters that the copy to which the state points was not produced at trial but rather is the copy he attached to his post-conviction application which ultimately led to the grant of the out-of-time appeal.  Petitioner is clearly correct.  Petitioner's

---

[33]  State Rec., Vol. II of VII, supplemental police report, p. 13 (emphasis added).

[34]  State Rec., Vol. IV of VII, trial transcript, pp. 209-13.  At the pretrial suppression hearing, Harris indicated that the statement was made on August 27, approximately one week after petitioner's arrest.  State Rec., Vol. II of VII, transcript of July 16-17, 1992, pp. 11-14 and 21-22. The text of that statement, which was allegedly given in St. James Parish, is not incorporated into the withheld supplemental police report prepared by the New Orleans Police Department.

"Memorandum in Support of Application for Post Conviction Relief" indicated that he was attaching the disputed material to his application as Exhibit A.[35]  When the document referenced by the state is closely is examined, one cannot help but notice that the top right hand corner of the first page it is marked "Exhibit 'A'" in a typeface identical to the one used in petitioner's supporting memorandum.   Accordingly, this Court has no hesitation in concluding that the copy of the supplemental police report is in fact the one attached to the post-conviction application, not a copy that entered the record at the time of the trial.

The state next argues that the supplemental police report, which incorporates Clay's statement, must have been available to the defense because the statement was discussed at the pretrial motion hearing.  Again, the Court disagrees.  While there were references to the statement at that motion hearing, one cannot conclude based on those references that the statement or supplemental police report had been made available to defense counsel.  If anything, the opposite is true.  At one point in the hearing, the judge indicates that, if necessary, he would conduct an *in camera* inspection of the witness statements.[36]  If the defense was in possession of the statement, there obviously would have been no reason to conduct an inspection *in camera*.

The state next argues that, at a minimum, the reference at the motion hearing made defense counsel aware that the statement existed, and, therefore, he could have requested it at that point if he had wanted it.  While that it is true, it is also irrelevant.  "[T]he duty to disclose [Brady]

---

[35]  State Rec., Vol. I of VII,  "Memorandum in Support of Application for Post Conviction Relief," p. 13.

[36]  State Rec., Vol. II of VII, transcript of July 16-17, 1992, p. 17.

evidence is applicable even though there has been no request by the accused." Stickler v. Greene, 527 U.S. 263, 280 (1999); see also Dickson v. Quarterman, 453 F.3d 643, 647 (5th Cir. 2006); Johnson v. Dretke, 394 F.3d 332, 336 (5th Cir. 2004).

That said, the Court notes that petitioner has presented no evidence, such as an affidavit from counsel, establishing that the disputed evidence was not in fact disclosed. Nevertheless,  the weight of the evidence points to that conclusion.  Contrary to the state's assertions, there is no indication in the record that the evidence was disclosed.  On the other hand, the trial judge's reference to an "in camera inspection" would indicate that defense counsel was not privy to the evidence.  Further, and more convincing, the supplemental police report clearly refers to the fact that the gun was recovered in 1991, a fact of which defense was unaware until told by the prosecutor two days before trial.  If defense counsel had been in possession of the supplemental police report, the laborious examination at the motion hearing concerning the effect of the late disclosure would have been entirely unnecessary.  Based on all of these factors, the Court is convinced that the disputed evidence was not in fact disclosed to the defense prior to trial.

Therefore, the Court must proceed to the next inquiry, i.e. whether the evidence was favorable to the accused.  Evidence is considered favorable to the accused if it is exculpatory or could be used for impeachment purposes.  Banks v. Dretke, 540 U.S. 668, 691 (2004).  The Court finds that at least two pieces of the withheld evidence were favorable because they could have been used impeachment purposes.[37]

---

[37] The Court rejects the contention that the remaining piece of evidence, i.e. Clay's prior statement that petitioner exclaimed after the shooting that "he didn't want to shoot him but he made him," was favorable to the accused.  That evidence had no value for impeachment purposes, in that

First, there is no question that Clay's statement and trial testimony were inconsistent regarding whether he saw petitioner with the disputed gun immediately prior to the shooting. The state suggests that perhaps Clay simply misspoke in the statement and could have cleared up any inconsistency if questioned by defense counsel on that issue at trial. However, that is ultimately unknowable, because defense counsel was denied that opportunity due to the suppression of the statement.

Second, the supplemental police report was even more important for impeachment purposes. While the officer perhaps misunderstood or misrecorded the information in the supplemental police report indicating that Jasmin said the gun was found the day after the arrest,[38] defense counsel clearly could have attempted to use that purported information from Jasmin as a basis to challenge the trial testimony of the St. James Parish officers. When and how the gun was found was an issue at trial, with petitioner denying both that the gun was his and that he led police to the gun in the cane field several days after his arrest.[39]

---

it was not inconsistent with Clay's trial testimony. Further, it was not exculpatory for several reasons. First, it still pointed to petitioner as the killer. Second, it did not, as petitioner argues, show that he lacked specific intent. Third, it was inconsistent with petitioner's defense that he did not shoot the victim at all but was instead wrongly accused. If anything, the statement hurts, rather than aids, his defense.

[38]  One could infer from the report that the information was misrecorded. The report indicates that Jasmin first notified the New Orleans Police Department on August 21 that petitioner had been apprehended. However, the report further reflects that it was not until August 28 at 8:45 a.m. that Jasmin again contacted the New Orleans Police Department to report that the weapon had been recovered. State Rec., Vol. II of VII, supplemental police report, pp. 12-13. The timing of the follow-up contact would seem to suggest that the weapon was not found the day after the arrest but rather on August 27 as reflected in the trial testimony.

[39]  State Rec., Vol. IV of VII, trial transcript, pp. 311 and 321-24.

However, while the withheld evidence might have been helpful to the defense, that is not the applicable standard.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").  Rather, a Brady violation occurs only when the withheld evidence was "material" in the constitutional sense.  On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.  The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Youngblood v. West Virginia, 126 S.Ct. 2188, 2190 (2006) (per curiam).  The withheld evidence in this case simply does not rise to that level.

As to Clay's prior inconsistent statement regarding whether he saw the gun prior to the shooting, the underlying discrepancy is of little moment.  Even if Clay could perhaps have been impeached on that minor point, it would not have significantly undermined his testimony.  The fact remains that, regardless of whether or not he saw the *gun* prior to the shooting, he clearly and more importantly testified that he saw petitioner shoot the victim.  As to that fact, which is the determinative one, there is no discrepancy.

Although the discrepancy in the supplemental police report is more troubling, it is not sufficient to undermine confidence in the verdict.  It is true that, if defense counsel had the

report, he could have attempted to impeach the testimony regarding how the officers allegedly found the gun.  However, it must be remembered that their testimony and the discovery of the gun was a relatively unimportant aspect of the evidence against petitioner.  The gun was not and could not have been conclusively linked to the crime.  No bullets or casings were recovered, and so no ballistics tests could have been conducted to prove whether the gun was the one used to shoot the victim.[40] The *only* relevance of the gun was that, according to the eyewitnesses, it resembled the one used in the crime.  Therefore, even if defense counsel had been able to entirely discredit the officers' testimony, it ultimately would have made little difference.  Petitioner was not convicted based on the officers' testimony or the introduction of the similar-looking gun; rather, he was convicted based on the compelling testimony of Clay and Short, the two eyewitnesses to the shooting.

For all of the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his Brady claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

Petitioner next argues that, in light of the same inconsistencies, it is evident that the prosecution knowingly allowed false testimony to go uncorrected.  However, for a petitioner to establish that his constitutional rights have been violated by the introduction of false testimony, he "must show (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605,

---

[40]  See State Rec., Vol. II of VII, transcript of July 16-17, 1992, p. 29.

609 (5th Cir. 2001). In this case, petitioner has presented no evidence that the trial testimony was in fact false, much less that the prosecution knew it was false. Petitioner's evidence shows nothing more than the fact that the witnesses purportedly previously made statements inconsistent with their testimony at trial. However, that is woefully short of the evidence required to support a claim that the prosecution knowingly presented false testimony. See Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002) ("[I]t is not enough that the [allegedly false] testimony is challenged by another witness or is inconsistent with prior statements."). Moreover, for the same reasons as discussed with respect to the Brady claim, the testimony at issue was not "material" in the constitutional sense. Accordingly, petitioner has not met his burden of proof with respect to this claim and, therefore, the claim necessarily fails.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim that the prosecution knowingly allowed false testimony to go uncorrected was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

<u>Prosecutorial Fraud</u>

Separate and apart from petitioner's Brady claim, he additionally claims that the prosecutor committed fraud upon the court by falsely claiming that he first discovered the existence of the gun and petitioner's statement only two days prior to trial. When petitioner asserted that claim in his state post-conviction proceedings, the state district court found that the claim had "no

merit."[41]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[42] and the

Louisiana Supreme Court denied the related writ application without assigning reasons.[43]

   In connection with a related claim, the issue of the prosecution's discovery of the

disputed evidence was addressed by the Louisiana Fourth Circuit Court of Appeal on the second

direct appeal:

>   At a pre-trial hearing on the admissibility of the weapon,
> defense counsel acknowledged that he had received notice of the
> State's intent to introduce the gun "two days prior to trial".  Counsel
> moved that the weapon be suppressed, arguing that it had no
> connection with this prosecution.  The trial court overruled the
> motion, finding that the weapon was connected to the prosecution,
> was relevant because it was alleged to belong to the defendant, and
> was similar to the gun that eyewitnesses saw the defendant use to kill
> the victim.
>
>   At the motion hearing, defense counsel also complained that
> he should have been notified of the weapon in the State's answer to
> discovery.  The prosecutor responded that he had recently been
> assigned to the case, that he had gone to St. James Parish as part of
> his preparation for trial, and that he notified defense counsel of the
> statement and gun as soon as he had knowledge of them and knew
> that he wanted to introduce them at trial.  The trial judge accepted the
> prosecutor's explanation as that of an officer of the court and noted
> that there was no contradictory evidence.
>
>   The defendant challenges the trial judge's credibility
> determination, insisting that he should have relied upon the testimony
> of Det. Sanders Harris that "when we checked NCIC they had a
> warrant out on [defendant] ... and they told us that he was involved
> in an incident down here and if we had a weapon.  And we told them

---

[41]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[42]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[43]  State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

where – we exchanged information."  Under cross-examination, defense counsel failed to ask Det. Sanders to identify the "they" who had a warrant out on the defendant or the "them" with whom he exchanged information.

The defendant's reliance upon Det. Harris' statement as conclusive evidence that the New Orleans District Attorney had the defendant's statement and gun at the time the defense filed its discovery request is misplaced.  The NCIC is a police operation, not part of the District Attorney's office, and it is the police, not the District Attorney, who obtained an arrest warrant for the defendant.  Furthermore, Det. Harris also testified that he personally recovered the gun on 27 August 1991, and that he had not spoken to any New Orleans District Attorney about it other than the prosecutor, and had not spoken to him prior to the visit to St. James Parish only days before trial.  Harris' testimony was corroborated by Maj. Charles Jasmin, who testified that while he had spoken with NOPD about the defendant, he had not been contacted by the trial prosecutor or anyone in the New Orleans District Attorney's office until the week before the trial.  This testimony refutes the defendant's suggestion that Harris or anyone in St. James Parish had advised the prosecutor of the gun and statement in August of 1991.

A determination of credibility lies within the sound discretion of the trial court, and like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence.  State v. Vessell, 450 So.2d 938, 943 (La. 1984).

In this case, the defendant has not presented any evidence that would support a finding of error in this credibility determination, and the record contains ample testimony to support the reasonable conclusion that the district attorney did not have the statement and/or gun in August 1991.[44]

Much later, petitioner obtained a copy of the supplemental police report in this case which documented that the gun had been found by the officers of the St. James Parish Sheriff's Office.  Based on that information in the supplemental police report, petitioner now argues that it

---

[44] State v. Brooks, No. 2002-KA-1079, at pp. 6-8; State Rec., Vol. III of VII.

is evident that the prosecutor lied to the court by stating that he became aware of the disputed evidence only shortly before trial.

As a preliminary matter, this Court agrees with petitioner's conclusion that it is unlikely that the prosecutor's file did not include a copy of the supplemental police report referencing the gun. Even so, it does not necessarily follow that the prosecutor lied to the trial court in stating that he learned of the gun's existence only two days prior to trial. Although the gun is in fact mentioned in the police report, it is a passing reference comprising a mere two brief paragraphs in a fourteen page report. It is not inconceivable that the prosecutor, who was only recently assigned to the case, may have overlooked the reference until preparing for trial.[45]

To the extent that petitioner may also be contending that previous prosecutors assigned to the case gave false or misleading answers to discovery requests regarding physical evidence in the case, that claim also fails. In the first place, there is simply no evidence whatsoever that prior prosecutors *intentionally* gave false or misleading answers when responding to the discovery requests. Second, even if there were discovery abuses, that would at most violate state law. However, mere violations of state law do not warrant federal *habeas corpus* relief; rather, such

---

[45]  The prosecutor stated:

> The state was not aware [of the gun], Your Honor. I just became involved in the case. What I did was I started doing a little bit of investigation myself, as I normally do. I knew that he was arrested in St. James Parish. I went out there the other day. And I discovered all of this: the statement, the gun. Your Honor, I – as soon as I was made aware of it, I immediately telephone Mr. Cantrell [the defense attorney], to let him know what I had become aware of and the evidence I had discovered. I did not know, Your Honor, that this was the case.

State Rec., Vol. II of VII, transcript of July 16-17, 1992, p. 28.

relief may be granted only to remedy violations of the Constitution and laws of the United States. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).  There simply is no general federal constitutional right to discovery in criminal cases.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Burns v. Lafler, 328 F.Supp.2d 711, 723 (E.D. Mich. 2004).

   For all of the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claim of prosecutorial fraud was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

Ineffective Assistance of Counsel

   Petitioner claims that he received ineffective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.

   To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions

in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ...

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).

Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide

range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986);

Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

       In order to prove prejudice with respect to trial counsel, petitioner "must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable

probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a

determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d

at 793.

       Petitioner bears the burden of proof when asserting an ineffective assistance of

counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel

was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson,

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may

dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

       Petitioner asserted his ineffective assistance of counsel claims both in his second

direct appeal and in his 2003 state post-conviction application.  In both instances, the claims were

denied as having no merit.  Because an ineffective assistance of counsel claim involves a mixed question of law and fact, this Court must defer to the state court on such a claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

      In the instant case, petitioner argues that his counsel was ineffective in several respects.

      First, petitioner claims that his counsel was ineffective in failing to vigorously cross-examine and impeach Donnie Clay.  In particular, petitioner alleges that counsel failed to adequately establish the relevancy of Donnie Clay's prior arrest record.  Petitioner argues that such evidence could have been used to show that Clay's testimony was motivated by a desire for revenge and retaliation, because he had a prior arrest for which he blamed petitioner.  He further alleges that counsel should have moved for production of Clay's juvenile record which allegedly would have shown that, contrary to his trial testimony, he was aware that drugs were distributed on the corner where the victim was killed.

      These claims, which were first asserted in petitioner's 2003 post-conviction application, were denied by the state district court as having "no merit."[46]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[47] and the Louisiana Supreme Court denied

---

[46]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[47]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

the related writ application without assigning reasons.[48]  The state court denial is neither contrary to, nor an unreasonable application of, clearly established federal law.   It is clear that, under the applicable federal law, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005), cert. denied, 125 S.Ct. 1026 (2006).  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.  In the instant case, defense counsel in fact vigorously cross-examined Clay on several issues.  The fact that counsel decided to forego examination into Clay's prior arrest and juvenile record did not render his cross-examination so deficient as to violate petitioner's constitutional rights, and petitioner certainly has not shown that he was prejudiced as a result.  That is especially true in light of the fact that he has presented no colorable evidence in support of his allegations regarding Clay's prior criminal record or his purported animosity toward petitioner.

Second, petitioner claims that his counsel was ineffective in failing to "move for a continuance, adequately prepare, and to make reasonable adjustments to the defense strategy" after learning only two days prior to trial that the prosecution intended to introduce the gun and statement.

---

[48]   State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

Petitioner first asserted this claim in his direct appeal.  In rejecting the claim, the Louisiana Fourth

Circuit Court of Appeal held:

> The defendant herein is once again arguing that he did not receive a fair trial because of the introduction of the gun recovered in St. James Parish.  He claims his counsel should have demanded a continuance in order to undertake unspecified trial preparation to offset the alleged prejudice he suffered by the admission of the gun into the proceedings.
>
> In State v. Bright, 98-0398 (La. 4/11/2000), 776 So.2d 1134, 1157, the Louisiana Supreme Court set forth the standard for reviewing ineffective assistance of counsel claims:
>
>> To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect. Strickland v. Washington, *supra*; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)....
>>
>> A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal.  E.g., State v. Prudholm, 446 So.2d 729 (La. 1984). However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate.  E.g., State v. Hamilton, 92-2639 (La. 7/1/97), 699 So.2d 29, 32-35.

Bright, 776 So.2d at 1157.

> In this case as to the first Strickland prong, deficient performance, the defendant makes only the conclusory statement that counsel was unprepared to go to trial.  However, the record indicates that counsel acknowledged that he had two days notice prior to trial of the State's intention to introduce the gun into evidence.  Moreover, counsel had the benefit of a pretrial motion on the admissibility of the defendant's statement and gun, during and after which he argued

> vigorously and knowledgeably for exclusion on the basis of late
> discovery violation and relevance.  The defendant does not provide
> any facts to support the claim that failure to request a continuance
> standing alone demonstrates deficient performance.  In light of the
> entire record and the legal standard of proof required for an
> ineffective assistance claim, the defendant has failed the first prong
> of the <u>Strickland</u> test.[49]

The Louisiana Supreme rejected the related writ application without assigning reasons.[50]

Undeterred, petitioner again asserted the claim in his 2003 post-conviction application.  The state district court likewise rejected the claim as having "no merit."[51]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[52] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[53]

The rejection by the state courts of petitioner's claim regarding the failure to request a continuance was neither contrary to, nor an unreasonable application of, clearly established federal law.  Again, a decision on whether or not to seek a continuance is inherently one of trial strategy and, as such, is generally accorded great deference.  <u>See, e.g.</u>, <u>McVean v. United States</u>, 88 Fed. App'x 847, 849 (6th Cir. 2004); <u>Moore v. Casperson</u>, 345 F.3d 474, 490 (7th Cir. 2003).  Two days

---

[49]  <u>State v. Brooks</u>, No. 2002-KA-1079, at pp. 12-13; State Rec., Vol. III of VII.

[50]  <u>State <i>ex rel.</i> Brooks v. State</u>, 855 So.2d 757 (La. 2003) (No. 2003-KO-0706); State Rec., Vol. VI of VII.

[51]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[52]  <u>State v. Brooks</u>, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[53]  <u>State <i>ex rel.</i> Brooks v. State</u>, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

prior to trial, defense counsel was informed of the existence of the gun and the statement regarding it allegedly made to the St. James Parish officers, and he therefore had sufficient time to determine whether additional delays in the proceedings were necessary to adequately represent his client.  He obviously decided that such delays would not be beneficial, and this Court has no sound basis to second-guess that determination.  As noted previously in this opinion, ballistic testing was not possible due to the fact that no bullet or casings were recovered from the victim or the crime scene;[54] therefore, no delays for such testing were necessary.  Moreover, again, the weapon and the related statement were hardly crucial evidence in this case.  Rather, as noted, petitioner's conviction resulted not from that evidence but instead from the testimony of eyewitnesses who saw him commit the murder.  In light of the overwhelming evidence, petitioner simply cannot show that any prejudice resulted from counsel's failure to seek further delays in the proceeding.[55]

        Third, petitioner claims that his counsel was ineffective in failing to elicit additional testimony from defense witnesses Elise Belton and Geralyn Butler.  That claim, which was first asserted in petitioner's 2003 post-conviction application, was denied by the state district court as

---

[54]  See State Rec., Vol. II of VII, transcript of July 16-17, 1992, p. 29.

[55]  Indeed, the Louisiana Fourth Circuit Court of Appeal noted:  "In light of the strength of the State's case against the defendant, it is unreasonable to conclude that the jury decided this case on the basis of the gun."  State v. Brooks, No. 2002-KA-1079, at p. 9; State Rec., Vol. III of VII.  That court further noted:  "The defendant was convicted by the overwhelming evidence of his guilt, not through any act or omission of his counsel."  Id. at p. 13.

having "no merit."[56]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[57] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[58]

Both Elise Belton and Geralyn Butler testified that they had never seen petitioner with a gun resembling the alleged murder weapon gun.[59]  Petitioner argues that counsel should have elicited additional testimony from these witnesses which might have been beneficial to the defense. However, again, the extent to which counsel elects to question witnesses is necessarily one of trial strategy and, therefore, is not to be lightly second-guessed.  That is especially true with this type of claim, which is disfavored because allegations regarding what the witness would have said if asked is largely speculative.  See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (regarding uncalled witnesses).  In light of those considerations, as well as petitioner's failure to prove that the unasked questions would have in fact resulted in answers beneficial to the defense, he simply has not met his burden to demonstrate either that counsel performed deficiently or that prejudice resulted.  The rejection of this claim by the state courts was not contrary to or an unreasonable application of clearly established federal law.

Fourth, petitioner claims that his counsel was ineffective in failing to adequately investigate the case.  That claim, which was first asserted in petitioner's 2003 post-conviction

---

[56]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[57]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[58]  State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

[59]  State Rec., Vol. IV of VII, trial transcript, pp. 276-79 and 292-95.

application, was denied by the state district court as having "no merit."[60]  The Louisiana Fourth

Circuit Court of Appeal found "no error" in that ruling,[61] and the Louisiana Supreme Court denied

the related writ application without assigning reasons.[62]

   With respect to the claim, petitioner contends that further investigation would have

revealed that (1) Donnie Clay blamed a prior arrest on petitioner, (2) Clay supplied Matthew Short

and William Kelley with drugs, and (3) Short did not actually see the shooting in this case because

he was at another location.  However, as the United States Supreme Court has noted, "[i]n any

ineffectiveness case, a particular decision not to investigate must be directly assessed for

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgments."  Strickland, 466 U.S. at 691.  Moreover, "counsel is not ineffective for failing to

discover evidence about which the defendant knows but withholds from counsel."  Lackey v.

Johnson, 116 F.3d 149, 152 (5th Cir. 1997).  Counsel would have no reason to independently suspect

that Clay blamed a prior arrest on petitioner[63] or that Clay's alleged drug-dealing would be relevant

to petitioner's identification of the shooter; therefore, unless petitioner informed counsel of these

suspicions, a fact he does not allege, counsel can hardly be faulted for failing to investigate such

---

[60]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[61]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[62]  State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

[63]  In fact, petitioner testified at trial that there were no problems between him and Clay.  State Rec., Vol. IV of VII, trial transcript, pp. 302-03 and 312-13.

matters.  Further, petitioner candidly admits that he was present at the shooting and, therefore, he would have known whether Short was also present.  In fact, petitioner testified at trial that Short was around the corner at the time of the shooting;[64] however, he does not allege that he previously apprised counsel of Short's alleged absence.  Therefore, again, there is no basis for finding that counsel had any reason to suspect that Short was allegedly elsewhere.  In light of the foregoing, petitioner clearly has not shown that rejection of this claim by the state courts was contrary to or an unreasonable application of clearly established federal law.

Fifth, petitioner claims that his counsel was ineffective in failing to object and move for a mistrial based on allegedly improper comments made by the prosecutor during closing argument.  That claim, which was first asserted in petitioner's 2003 post-conviction application, was denied by the state district court as having "no merit."[65]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[66] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[67]

With respect to this claim, petitioner alleges that the prosecutor made several improper remarks during closing argument.  In particular, he contends that the prosecutor indicated

---

[64]  State Rec., Vol. IV of VII, trial transcript, pp. 309 and 314.

[65]  State Rec., Vol. V of VII, Judgment dated February 19, 2004.

[66]  State v. Brooks, No. 2004-K-0483 (La. App. 4th Cir. Apr. 26, 2004) (unpublished); State Rec., Vol. V of VII.

[67]  State ex rel. Brooks v. State, 896 So.2d 1030 (La. 2005) (No. 2004-KH-1394); State Rec., Vol. VI of VII.

that additional witnesses were not called to testify because it would have placed them in danger[68]

and implied that the flight in St. James Parish was related to this crime.[69]  He further objects to the

prosecutor's references to other unrelated murders in the city.[70]

Some of petitioner's contentions were addressed by the Louisiana Fourth Circuit

Court of Appeal on direct appeal:

> The scope of closing argument shall be confined to evidence
> admitted, to the lack of evidence, to conclusions of fact that the state
> or defendant may draw there from, and to the law applicable to the
> case. The argument shall not appeal to prejudice.  The state's rebuttal
> shall be confined to answering the argument of the defendant.
> La.C.Cr.P. art. 774.  However, a prosecutor retains considerable
> latitude when making closing arguments.  State v. Taylor, 93-2201
> (La. 2/28/96), 669 So.2d 364, 374.  The trial judge has broad
> discretion in controlling the scope of closing arguments.  State v.
> Casey, 99-0023, (La. 1/26/2000), 775 So.2d 1022.  Even if the
> prosecutor exceeds the bounds of proper argument, the court will not

---

[68]  The prosecutor stated:

> I have a power that I can use.  I can call anybody in here and force them up on that
> stand.  But I have a policy not to do that.  I know a lot of people who were out on
> that scene.  And if someone doesn't want to come in I don't force them. ...  But I
> never put anybody's life in danger who doesn't want to.

State Rec., Vol. II of VII, transcript of arguments, p. 29.

[69]  See State Rec., Vol. II of VII, transcript of arguments, pp. 3-4.  Petitioner states that his flight
in St. James Parish was in fact in connection with another unrelated crime.

[70]  The prosecutor stated:

> The problem is is that's why so many murders are unsolved.  Most of the
> murders committed in this city are committed in front of many, many people, just
> like this one was.  It was committed in front of the girl who was in the white jeep.

State Rec., Vol. II of VII, transcript of arguments, p. 29.

reverse a conviction unless thoroughly convinced that the argument influenced the jury, and contributed to the verdict. Id.; State v. Ricard, 98-2278, 99-0424 (La. App. 4 Cir. 1/19/2000), 751 So.2d 393, 395.

In this case, during the prosecution's rebuttal argument, defendant objected to the prosecutor's remark that murders in this city are committed in front of many, many people, just like this one was, which was committed in front of the girl who was in a white jeep. The trial court sustained the defendant's objection. However, defense counsel did not move for a mistrial or request an admonition after the trial court sustained his objection to the remark. Accordingly, he cannot now complain of error regarding the question. See State v. Cager, 97-1877, (La. App. 4 Cir. 3/24/99), 732 So.2d 97, 105. Nevertheless, the defendant complains that the comment was so prejudicial as to warrant reversal of his conviction. To that end, the defendant must show that the prosecutor's remarks influenced the jury and contributed to the verdict. State v. Ricard, *supra*.

The remark complained of was made in rebuttal to defense counsel's argument that the State had put on only two eyewitnesses even though there were many others; specifically, the defense counsel argued:

> They [the State] had showed you all these pictures. And they talked about this white jeep. And they talked about Calvin talking to a lady in a white jeep. And those pictures show the white jeep there. And that's where Calvin was supposed to be talking. Why didn't they bring her in? Donny Clay knew her name. He said it's Judy. Matthew Short said yeah. Her and Calvin were good friends. She came down there three or four times a week. But those prosecutors chose not to bring her in. Why? Because she would have told you that Matthew Short was not out there. She was talking to Calvin. Donny Clay wasn't out there. She was talking to Calvin. Neither was William Kelley.

While the prosecutor perhaps should not have couched his rebuttal in the context of other murders in which witnesses had not come forward to testify, any such reference was cured by the judge's repeated instruction to the jury that its decision was to be based upon testimony and evidence, not on the lawyer's arguments. The prosecutor had the right to rebut the defense argument that the

prosecution chose not to have "the woman in the white jeep" testify because she would have said the State's eyewitnesses were liars. See La. C.Cr.P. art. 774; State v. Adams, 98-2062 (La. App. 4 Cir. 8/4/99), 752 So.2d 186. In rebuttal closing argument, the State has the right to answer the arguments of defendant.

Next, the defendant complains of the State's comment that David Moore was 'scared' when Moore testified at trial. The defendant did not lodge a contemporaneous objection to this comment; therefore, it was not preserved for appellate review. La. C.Cr.P. art. 841.

Defendant concludes this assignment by complaining that the prosecutor questioned the credibility of Ricky Moore by stating that he was testifying solely out of fear, and intimated that he, himself, knew what Ricky Moore would say at trial and that such testimony would be damaging to the defense. There was no contemporaneous objection made to this comment; therefore, it was not preserved for appellate review. La. C.Cr.P. art. 841.

In the circumstances complained of by the defendant in this case, the prosecutor was speaking in rebuttal as allowed by law, and the trial judge offset any prosecutorial misstatement with his repeated reminder to the jury that the evidence, not the arguments, was the only basis for their decision. This assignment of error is without merit.[71]

Petitioner now argues that counsel should have lodged objections to all of the allegedly improper comments and sought a mistrial.

Once again, petitioner is quibbling with counsel's strategic choices. The United States Fifth Circuit Court of Appeals has held: "A decision not to object to a closing argument is a matter of trial strategy." Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992). Further, it has been noted:

Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective

---

[71] State v. Brooks, No. 2002-KA-1079, at pp. 10-12; State Rec., Vol. III of VII.

> because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000); see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993).  A decision not to move for a mistrial is similarly one of trial strategy, see Hatch v. Lambert, 215 Fed. App'x 614, 615 (9th Cir. 2006), and so is likewise generally immune from judicial second-guessing.

In any event, this Court need not address whether counsel's choices in this regard constituted deficient performance, because petitioner clearly has not shown prejudice.  In light of the overwhelming evidence in this case, the prosecutor's comments were clearly inconsequential.  Moreover, as the state court noted, the trial judge clearly and repeatedly instructed the jury that the arguments were not to be considered as evidence in the case.[72]  There is no basis for concluding that the jurors disregarded those instructions.  Petitioner simply cannot show that there is a reasonable probability that if counsel had only objected to the comments and moved for a mistrial, the result of the proceeding would have been different.

In summary, whether considered separately or cumulatively, petitioner's allegations fall far short of what is required to established that his counsel was ineffective.  He clearly has not demonstrated that state court decisions rejecting his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

---

[72]   State Rec., Vol. II of VII, transcript of arguments and jury instructions, pp. 21, 30, and 39-40.

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Noel Brooks be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).

New Orleans, Louisiana, this twenty-seventh day of August, 2007.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE